IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00551-CMA-KLM

CONTINENTAL CASUALTY COMPANY, an Illinois corporation,

      Petitioner,

v.

KIDNEY REAL ESTATE ASSOCIATES OF ARVADA, LLC, a Colorado limited liability company,

      Respondent.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Respondent's **Motion to Dismiss** [#11][1] (the "Motion"). Petitioner filed a Response [#13] in opposition to the Motion and Respondent filed a Reply [#14]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion [#11] has been referred to the undersigned for a recommendation regarding disposition. *See* [#12]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#11] be **DENIED**.

## I. Background

      Petitioner, an insurance company, issued Property Insurance Policy No. B

_____

[1] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

5094150675 (the "Policy") to Respondent, the owner of property in Arvada, Colorado (the "Property"). *Petition* [#1] ¶ 4. The Policy covered "direct physical loss of or damage to covered property caused by or resulting from a covered cause of loss, including damage caused by wind or hail during the policy period." *Id.* On May 8, 2017, the Property sustained damage caused by a hailstorm and Respondent subsequently submitted an insurance claim to Petitioner in the amount of $162,489.57. *Id.* ¶¶ 3, 5. Petitioner conducted its own investigation of the Property damage and issued payment for the assessed damages in the amount of $19,002.21. *Id.* ¶¶ 6, 7. This amount was the net payment after applying $1,000 for the Policy's windstorm/hail deductible and $9,599.81 in depreciation. *Id.* ¶ 7. Respondent disagreed with the coverage determination and invoked the appraisal provision of the Policy, which states:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

*Id.* ¶¶ 8, 10. Pursuant to this provision, Respondent and Petitioner retained their respective appraisers. *Id.* ¶ 8. The appraisers could not agree on selecting an umpire. *Id.* For that reason, Petitioner filed the Petition to Appoint Umpire [#1] (the "Petition") in this Court on March 8, 2018. In the Petition, Petitioner only seeks declaratory relief in the form of the appointment of an appraisal umpire and states that jurisdiction in this Court is proper

-2-

pursuant to 28 U.S.C. § 1332, Fed. R. Civ. P. 57, and 28 U.S.C. § 2201. *Id.* ¶¶ 1-3. On April 6, 2018, Respondent filed the present Motion [#11] pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Court does not have subject matter jurisdiction to appoint an appraisal umpire and that, because of this, the "action should have been filed in state court." [#11] at 1.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). "The lack of federal jurisdiction cannot be overcome by mere agreement of the parties." *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding

disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## III. Analysis

Although the Motion [#11] is not a model of clarity, Respondent appears to argue that this Court lacks subject matter jurisdiction to adjudicate the Petition for three reasons. First, that there is no case or controversy between Petitioner and Respondent (collectively, the "Parties") to raise a justiciable issue. *See Motion* [#11] at 2-3; *Reply* [#14] at 5-6. Second, that the amount in controversy requirement is not satisfied to grant the Court diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See Motion* [#11] at 2; *Reply* [#14] at 3-5. Third, that these two deficiencies cannot be cured by Petitioner filing its Petition under the Declaratory Judgment Act. *See Motion* [#11] at 3-4; *Reply* [#14] at 6-8. The Court will address each argument in turn.

### A. Case or Controversy

As stated above, Respondent first argues that the Court lacks subject matter jurisdiction because the Petition fails to demonstrate a case or controversy between the Parties which raises a justiciable issue. *See Motion* [#11] at 2-3; *Reply* [#14] at 5-6.

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. To meet this jurisdictional

requirement, an actual case or controversy must be present at all stages of the litigation. *See Copar Pumice Co. v. Tidwell*, 603 F.3d 780, 792 (10th Cir. 2010). To establish that a case or controversy exists, Petitioner must demonstrate that the controversy is: (1) definite, concrete, and touches on the legal relations of the Parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Another "element of the case-or-controversy requirement is that [Petitioner] must establish that [it] [has] standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks and citations omitted). The elements of standing are the existence of a particularized injury that is fairly traceable to Respondent and capable of being redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In other words, Petitioner must allege an injury in fact, assert a causal connection between the injury in fact and the challenged action, and demonstrate that there is a likelihood that the injury can be redressed by a favorable decision. *See Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011). As with all requisites to conferring subject matter jurisdiction, parties cannot create standing by agreement. *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 593 (10th Cir. 1996).

Respondent first argues that "[t]he appointment of an umpire does not directly translate into a justiciable issue because of the possibility that [ ] the two appraisers will disagree as to the amount of loss and thereafter submit their differences to the Court-appointed umpire -- i.e., the umpire may not even be utilized to resolve the underlying amount of loss dispute." *Motion* [#11] at 2-3. Respondent cites no authority to support this argument.

The Court agrees with Petitioner that, whether or not the appraisers disagree at a future date, Respondent's argument ignores the adversarial dispute, or "disagreement," that presently exists between the Parties. The Petition clearly demonstrates at least two on-going controversies that include disputes over the value of loss to the Property and the appointment of a neutral umpire. *See Petition* [#1] ¶¶ 8, 9. "Indeed, [Respondent's] invocation of appraisal is premised on the existence of a contractual dispute between the [Parties]." *Response* [#13] at 7; *see Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10-61987-CIV, 2011 WL 1544860, at *5 (S.D. Fla. Apr. 15, 2011) (construing a similar appraisal provision as making "disagreement a prerequisite to appraisal"). Moreover, according to the Policy's appraisal provision, the appointment of an umpire is a condition precedent to an appraisal occurring. *See Petition* [#1] ¶ 10.[2] Therefore, the Parties' disagreement over selecting an umpire precludes Petitioner (or Respondent) from obtaining the appraisal that Respondent invoked, and further delays resolution of the claim under the Policy. *Response* [#13] at 7; *see Maryland Casualty Co.*, 312 U.S. at 273 (An actual controversy exists for purposes of the Declaratory Judgment Act where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). Accordingly,

---

[2] The Policy's appraisal provision provides that when one party invokes appraisal after a disagreement on the amount of loss, "each party will select a competent and impartial appraiser [and] [t]he two appraisers will select an umpire." *Petition* [#1] ¶ 10. In the event the two appraisers cannot agree to an umpire selection, "either may request that selection be made by a judge of a court having jurisdiction." *Id.* Although the provision reads that the Parties "may" seek appointment by a judge, the provision as a whole implies that an umpire *must* be selected prior to an appraisal occurring. Otherwise, there would be no neutral third party to whom the appraisers could submit their differences if they fail to agree on the amount of loss. Therefore, if the appraisers cannot agree to an umpire and an umpire must be appointed prior to an appraisal, the Parties must seek appointment of an umpire by a court with jurisdiction before the claim can be resolved.

the Court finds that the Petition does present an actual controversy between Petitioner and Respondent that is both definite and sufficiently real to confer federal court jurisdiction. *See Aetna Life Ins. Co.*, 300 U.S. at 240-41; *Maryland Cas. Co.*, 312 U.S. at 273 (1941).

Respondent next argues that no actual controversy exists because the Parties are complying with the terms of the Policy and thus, "there is no allegation that either party breached the insurance contract." *Motion* [#11] at 2-3. While Respondent does not identify which justiciability doctrine this argument is directed to, the Court construes this argument as challenging Petitioner's ability to demonstrate an injury in fact for purposes of standing. Petitioner asserts in its Response [#13] that Petitioner's "inability to proceed with the appraisal guaranteed by the contract is an injury in fact, which affords [Petitioner] the requisite standing." [#13] at 7. In support, Petitioner cites *Matter of Appraisal of Church Mut. Claim No. 1171752 v. Paul Quinn AME Church*, No. A-13-CA-079-SS, 2013 WL 12093756 (W.D. Tex. Aug. 30, 2013), which the Court finds persuasive.

Like the present case, *Church* involved a disputed claim of loss under an insurance policy that contained an appraisal provision nearly identical to the provision found in the Policy here. *Church*, 2013 WL 12093756, at *1.[3] After the appraisal provision was invoked and the parties' appraisers could not agree to an umpire, the plaintiff insurance company filed a federal suit under diversity jurisdiction, requesting that the district court appoint an

---

[3] The appraisal provision at issue in *Church* stated: "If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding." *Church*, 2013 WL 12093756, at *1.

umpire. *Id.* The defendant insured then moved for summary judgment, in part, on the ground that the insurance company lacked standing. *Id.*

The district court rejected this argument in holding that the insurance company had demonstrated an injury in fact to establish standing. *Id.* at *2. Specifically, the district court found that the insurance company's right to an appraisal under the insurance policy, and the insured's failure to comply with the provision by selecting an umpire, evidenced "a concrete, particular injury" that was not "[conjectural] or hypothetical." *Id.* As the district court explained:

> There is no doubt there is a causal connection between [the insured's], and [insured's] appraiser's refusal to agree to an umpire, and [the insurance company's] inability to obtain an appraisal as guaranteed under the [parties' insurance policy]. Finally, it is quite certain this injury can and will be addressed by a decision in [the insurance company's] favor.

*Id.*[4]

Although Respondent argues Church is "inapposite" to the present case, this contention appears directed only to the amount in controversy analysis found in *Church* which this Court addresses below in Section B. *Reply* [#14] at 5. In fact, with respect to the issue of standing, Respondent appears to concede that *Church* supports the conclusion that Petitioner is the appropriate party with standing to seek appointment of an umpire in federal court. *Id.* Therefore, the Court finds no reason to disagree with the holding in *Church* as a persuasive rebuttal to Respondent's standing argument. *See also Lochwood Chateau Master Home Owners Ass'n, Inc. v. Am. Family Mut. Ins. Co.*, No.

---

[4] The court in *Church* also rejected the argument that only the insurance company's appraiser, rather than the insurance company itself, had standing to seek appointment of an umpire in federal court. *Church*, 2013 WL 12093756, at *2.

15-CV-02246-MSK-KMT, 2017 WL 4837835, at *3 (D. Colo. Oct. 26, 2017) (stating that the "the inability to determine loss [is an injury] sufficient to establish standing for the declaratory judgment claim and for the claim for specific performance as to the appraisal process, but not as to the claims pertaining to non-payment.").

Moreover, Petitioner identifies another concrete injury attendant to this delay in appraising the loss and resolving the disputed claim.  Under Colorado law, Petitioner is required to maintain a reserve of funds while Respondent's claim remains pending. *Response* [#13] at 5-6 (citing Colo. Rev. Stat. § 10-3-201(1)(a)(V)); *see Silva v. Basin W., Inc.*, 47 P.3d 1184, 1189 (Colo. 2002) ("Colorado statutes[ ] require insurers to maintain reserves to assure the insurer's ability to satisfy its potential obligations under its policies."). The Court does not agree with Respondent that maintaining this reserve does not constitute an injury because Petitioner is "keeping money in its coffers and accruing interest." *Reply* [#14] at 5.  Aside from the fact that Respondent cites no authority for this argument, it is unquestionable that Petitioner has a legally protected interest in its funds and how they are allocated.  *See Lujan*, 504 U.S. at 560.  Thus, the fact that Petitioner must set aside a portion of those funds in reserve until Respondent's claim is resolved creates an "injury [that] is financial, definite, and concrete."  *Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017).

The Court further rejects Respondent's alternative argument that, even if Petitioner's maintenance of a reserve amounts to an injury in fact, this injury is self-inflicted because Petitioner chose to bring this action in federal court and agreed to include "this [appraisal] mechanism in their contract for resolving disagreement[s] about an umpire." *Response* [#14] at 6.  Respondent again cites no authority for this assertion and the Court finds this

argument to obfuscate the fact that Respondent, not Petitioner, invoked the appraisal provision. *See Petition* [#1] ¶ 8; *Motion* [#11] at 1-2.

Finally, Respondent quotes an Order to Show Cause issued in this district apparently in support of its argument that Petitioner cannot identify an injury in fact to establish standing. *Motion* [#11] at 4 (quoting *Vista Pointe Townhome Association, Inc. v. Auto-Owners Ins. Co.*, No. 16-cv-0973-MSK-NYW, 2017 WL 4772859, at *3 (D. Colo. Oct. 23, 2017) [hereinafter *Vista Pointe Order to Show Cause*]). Respondent does not explain why the *Vista Pointe Order to Show Cause* is dispositive of the standing issue but merely quotes the Order by stating that "the request for appointment of an umpire is not a request that the Court compel a party to perform obligations under the contract. Rather, it is a request that the Court discharge a duty (resolving the parties' [appraisers'] impasse) that the parties created for it in their contract." *Id.* (quoting *Vista Pointe Order to Show Cause*, 2017 WL 4772859, at *3) (modifications in the original).

*Vista Pointe* is similar to this action in that it was a hail-damage case where the value of an insurance claim was at dispute and a nearly identical appraisal provision was invoked under the parties' insurance policy. *See Vista Pointe Order to Show Cause*, 2017 WL 4772859, at *1. However, as Petitioner thoroughly notes, *Vista Pointe* is distinguishable from the present case in several respects. *See Response* [#13] at 7-9. When the plaintiff insured in *Vista Pointe* filed suit, it was neither seeking a declaration of rights under the insurance policy, nor asking the Court to appoint an umpire. *Vista Pointe Order to Show Cause*, 2017 WL 4772859, at *1. Rather, the insured asserted three causes of action for breach of contract, bad faith breach of an insurance contract, and unreasonable delay and denial of payment of covered benefits, and requested that the

court compel the defendant-insurer to complete the appraisal process with the insured's designated appraiser. *Id.* Underlying these claims was not a disagreement over the selection of an umpire but was instead a dispute over the impartiality of the appraiser appointed by the insured. *Id.*

Shortly after the suit was filed, the parties consented to administratively close the case pending completion of the appraisal process. *Id.* Thereafter, the insured filed a motion to reopen the case and to appoint an umpire. *Id.* It was at this stage in the proceedings when the court issued the Order to Show Cause questioning whether the insured had standing to pursue any of its claims and seek appointment of an umpire, given that "no breach of contract existed [at] the time [the action was filed], and the parties [were] currently performing their obligations under the [insurance policy]." *Id.* at *2.

After the parties responded to the Order to Show Cause, the court ultimately found that the insured only lacked standing to pursue its breach of contract claim. *See Vista Pointe Townhome Association Inc. v. Auto-Owners Ins. Co.*, No. 16-CV-0973-MSK-NYW, 2018 WL 1773407 (D. Colo. Apr. 13, 2018) [hereinafter *Vista Pointe Opinion*]. As to the insured's request that the court compel the insurer to complete the appraisal process with the insured's designated appraiser, the court construed this request as a claim for specific performance of the appraisal provision to remedy the insurer's contractual breach. *Id.* at *6-7. Accordingly, because the court had found that the insured lacked standing to bring a claim for breach of contract, it further held that, "without a mature claim for breach of contract, [the insured] cannot request the remedy of specific performance of the contract." *Id.* at *6.

Within this analysis, the court dedicated one footnote to the jurisdictional issue

presented by the request to appoint an umpire. *See id.* at *6 n.5. In that footnote, the court suggested that the appraisers, rather than the insured or insurer, would be the appropriate parties with standing to seek a court-appointed umpire which, this Court notes, Respondent has not argued and is contrary to the decision in *Church* where the issue was directly presented. *Id.*; *see Motion* [#11]; *Church* 2013 WL 12093756, at *2. While the court in *Vista Pointe* also expressed "profound doubts that it would possess jurisdiction to select an umpire simply because the parties disagree," the court did not analyze the issue and was not faced with a declaratory judgment claim. *Vista Pointe Opinion*, 2018 WL 1773407, at *6 n.5; *see Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 WL 5366401, at *12 (D. Colo. Sept. 25, 2013) (noting that a statement from a prior case was not persuasive, in part, because it appeared "to be dicta, with no accompanying analysis or citation to case law"); *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1239 n. 3 (D. Colo. 2011) (stating that reliance "upon dicta [is] a dubious provenance for any legal proposition").

Furthermore, as Petitioner correctly observes, Respondent's reliance on *Vista Pointe* is misplaced to the extent that either the Order to Show Cause or Opinion are "read to suggest that state courts are courts of general jurisdiction for non-justiciable matters." *Response* [#13] at 9; *see Vista Pointe Opinion*, 2018 WL 1773407, at *6 n.5 ("At best, it would seem that a request for appointment of an umpire would have to be made to a court of general jurisdiction -- e.g. a state court."). Colorado state courts are themselves limited by the Colorado Constitution to resolve "actual controversies based on real facts" and not "[t]he mere possibility of a future claim." *Bd. of Directors, Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 105 P.3d 653, 656 (Colo. 2005). Indeed,

Colorado courts must "limit their exercise of judicial power through jurisprudential doctrines that include standing, mootness, and ripeness, to establish parameters for the principled exercise of judicial authority." *Id.* (citation omitted).

In this case, Respondent freely agreed to and invoked the Policy's appraisal provision. Petitioner and Respondent are presently at an impasse over selecting an umpire which the appraisal provision clearly contemplates by providing either party the option to request that selection be made by a court having jurisdiction. If this matter is "not justiciable," as Respondent contends, then no court would have jurisdiction to appoint an umpire and the Policy's appraisal provision would be incapable of being performed. This cannot be the result as "words of promise which by their terms make performance entirely optional . . . cannot serve as consideration for an enforceable agreement, and any purported 'agreement' would be illusory." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1153–54 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (applying Colorado law).

Accordingly, the Court finds that Petitioner has established the existence of a case or controversy that is both definite and sufficiently real. The Court further finds that, for purposes of standing, Petitioner has demonstrated a financial, concrete injury that is fairly traceable to Respondent's failure to agree to an umpire and will be redressed if the Court appoints an umpire pursuant to the Policy. The Court therefore concludes that it has subject matter jurisdiction to adjudicate the Petition under Article III of the United States Constitution.

## B.    Amount in Controversy

Respondent next argues that the Court lacks diversity subject matter jurisdiction

because the Petition fails to satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a).  *See Motion* [#11] at 2; *Reply* [#14] at 3-5.  Petitioner asserts that the amount in controversy is satisfied by Respondent's demand for payment in the amount of $162,489.57.  *Petition* [#1] ¶ 3; *see also Response* [#13] at 6.

Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction is conferred on district courts in all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."[5]  "When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the [Petitioner] must show that it does not appear to a legal certainty that [it] cannot recover the jurisdiction[al] amount."  *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003) (internal quotation marks omitted).  This requires Petitioner to demonstrate "that it is not legally certain that the claim is less than the jurisdictional amount."  *Id.*  "The legal certainty standard is very strict.  As a result, it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied."  Accordingly, "[t]here is a strong presumption favoring the amount alleged by the [Petitioner]."  *Id.*

In the Motion [#11], Respondent makes only one argument as to why the amount in controversy does not exceed $75,000.  According to Respondent, the amount in controversy requirement cannot be met in this case based on "the possibility that . . . the umpire selected by this Court might find the amount of loss to exceed the $75,000

_____

[5]  Petitioner has demonstrated, and Respondent does not contest, that diversity of citizenship exists.  *See generally Motion* [#11].  The Petition [#1] states that Petitioner is a corporation with its principal place of business in Illinois and Respondent is a Colorado limited liability company.  [#1] ¶ 2.

jurisdictional requirement." *Motion* [#11] at 3.

The Court quickly dispenses with this argument given that, as Petitioner notes, "the likely result" of this litigation is irrelevant in determining whether the amount in controversy meets the jurisdictional threshold. *Response* [#13] at 6. It is well settled that "[t]he amount in controversy . . . is not 'the amount the [Petitioner] will recover,' but rather 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)); *see also Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("The test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith."). Therefore, whether or not the appraisal process ultimately results in an amount of loss greater than $75,000, the Court initially finds that Petitioner has satisfied the amount in controversy requirement by asserting $162,489.57 as the amount at issue in this litigation.

In its Reply [#14], Respondent raises new arguments for why the amount in controversy requirement is not met which the Court finds similarly unavailing. Respondent first argues that there is simply "no amount in controversy before this Court" because "[i]f the Court were to fully resolve the issue presented by . . . appoint[ing] an appraisal umpire[,] no money will have exchanged hands and no money will have been spared from such an exchange." *Reply* [#14] at 3. In support of this argument, Respondent cites one unreported case from the Northern District of Texas, *Treasure Star Properties Fund, Inc. v. Admiral Ins. Co.*, No. 4:12-CV-462-Y, 2013 WL 12114861 (N.D. Tex. Apr. 1, 2013). *Reply* [#14] at 3, 8.

There, the district court remanded a case similar to the one here in which the plaintiff

filed a petition to appoint an umpire after the parties' appraisers failed to agree on a neutral umpire. *Treasure Star*, 2013 WL 12114861, at *1.  In remanding the case, the court found that the petition did "not involve a sufficient amount in controversy to invoke the [c]ourt's diversity jurisdiction." *Id.*  The court reached this conclusion based on the view that "the only relief that [the plaintiff] seeks is the appointment of a neutral umpire for appraisal [and the defendant] seeks no damages." *Id.*  Therefore, according to the court, "[a]lthough . . . there may be a broader dispute between the parties that involves more than $75,000, the [c]ourt is not persuaded that this is germane to the question of whether the amount in controversy in this case exceeds the jurisdictional minimum." *Id.* (emphasis omitted).

Putting aside the fact that *Treasure Star* is not binding precedent in the Tenth Circuit, the Court finds it unpersuasive for three reasons.  First, the rationale provided above is the extent of the district court's analysis, with no authority cited to support its conclusion.  *See Larson*, 2013 WL 5366401, at *12.

Second, although the facts underlying *Treasure Star* are similar to those presently before the Court, that case was procedurally different.  *Treasure Star* was removed to federal court from state court, hence a different presumption regarding the amount in controversy applies.  In cases removed to federal court, "there is a strong presumption that the plaintiff has not claimed a large enough amount to confer jurisdiction.  Concomitantly, there is a strong presumption against removal."  *Baker v. Sears Holdings Corp.*, 557 F. Supp. 2d 1208, 1212 (D. Colo. 2007) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290-92 (1938); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289 (10th Cir. 2001)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it *appears* that the district court lacks subject matter jurisdiction, the case shall be remanded.")

(emphasis added).  In contrast, and as stated above, where a case is initiated in federal court, "[t]here is a strong presumption favoring the amount alleged by the [petitioner]." *Woodmen*, 342 F.3d at 1216 (10th Cir. 2003); *see also Martin*, 251 F.3d 1284 at 1289; *Baker*, 557 F. Supp. 2d at 1212 ("In such a case, the amount claimed by the plaintiff is presumed to be sufficient to support diversity jurisdiction.").  Therefore, because *Treasure Star* was a removal case in which a different presumption applied to the amount in controversy issue, the Court finds that holding even less persuasive.

Third, while Respondent cites *Treasure Star* for the proposition that no amount in controversy exists where a party seeks only the appointment of an appraisal umpire, that view does not comport with other decisions in the Fifth Circuit or elsewhere.  *Church*, for instance, is a decision of a district court in the Fifth Circuit which held the amount in controversy requirement was satisfied based on the insured's disputed claim of $464,553.26.  *Church*, 2013 WL 12093756, at *1.  Respondent argues that *Church* is inapposite because "[t]here . . . the parties agreed that the amount in controversy requirement was satisfied."  *Reply* [#14] at 4-5; *see Church*, 2013 WL 12093756, at *1 (stating that "there is no dispute the amount-in-controversy requirement is satisfied.").  Respondent also recognizes, however, that "parties cannot concede jurisdiction by agreeing that the jurisdictional amount requirement has been satisfied."  *Reply* [#14] at 5 (quoting *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 n.4 (10th Cir. 1999)).  Although Respondent asserts that this "is exactly what happened in" *Church*, the Court declines to adopt this reading of the case considering all federal "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corporation*, 546 U.S. 500, 514

(2006).

Moreover, in contrast to *Treasure Star*, it appears that *Church* more closely aligns with the established caselaw on this issue. Several decisions "have looked beyond the cost of the umpire to the value of the parties' underlying dispute in determining whether the amount in controversy is sufficient." *Liberty Mut. Grp., Inc. v. Wright*, No. CIV.A. DKC 12-0282, 2012 WL 718857, at *3 (D. Md. Mar. 5, 2012); *see e.g.*, *Garvin v. Acuity*, No. 11-5105-CV-SW-RED, 2012 WL 12903747, at *1 (W.D. Mo. Jan. 18, 2012) ("[T]he amount in controversy is determined by the policy limits of the insurance policy, i.e. [the insured's] potential recovery, and is not merely the specific relief requested by [insured] in his [petition to appoint an umpire]."); *R.C. Spenceley, Inc. v. Topa Ins. Co.*, No. CIV. 2010-115, 2011 WL 3742181, at *4 (D.V.I. Aug. 24, 2011) ("Here, in assessing the amount-in-controversy, the Court . . . looks beyond the 'initial step' of the issue of the selection of an umpire."); *Church Mut. Ins. Co. v. Household of Faith Church*, No. CIV.A.06-3839, 2007 WL 1537629, at *2 (E.D. La. May 23, 2007) (looking to the value of the underlying dispute in measuring the amount in controversy in a case seeking the appointment of an umpire); *Ear, Nose & Throat Consultants of N. Mississippi, PLLC v. State Auto Ins.*, No. CIV.A. 3:05CV18-B-B, 2006 WL 1071834, at *1-2 (N.D. Miss. Apr. 21, 2006) (same).

While the Parties do not cite, and the Court did not locate, a Tenth Circuit decision specifically addressing this question, the cases cited above align with how the Tenth Circuit measures the amount in controversy in actions seeking either declaratory relief or to compel arbitration. "In cases seeking declaratory . . . relief, 'the amount in controversy is measured by the value of the object of the litigation' . . . which considers either the value to [the party seeking relief] or the cost to [the party against whom relief is sought]." *Lovell*

*v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); citing *Justice v. Atchison, Topeka and Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir. 1991)).  Relatedly, when "determining the amount in controversy in cases seeking to compel arbitration . . . [the Tenth Circuit] look[s] through to the possible award resulting from the desired arbitration." *Woodmen*, 342 F.3d at 1217 (internal quotation marks and citations omitted).[6]

Therefore, based on the above, the Court finds that the value of the object of this litigation is, at the very least, the difference between Respondent's initial claim of $162,489.57 and Petitioner's subsequent payment of $19,002.21.  This underlying disputed amount is $132,887.55, which obviously satisfies the jurisdictional threshold.  Accordingly, because the Petition asserts an amount in controversy greater than $75,000 and Respondent's arguments do not overcome the presumption favoring the amount alleged by Petitioner, the Court cannot say to a legal certainty that Petitioner cannot meet the amount in controversy.  The Court therefore concludes that Petitioner has sufficiently alleged an amount in controversy in excess of $75,000, conferring jurisdiction under 28 U.S.C. § 1332(a).

## C.    Declaratory Judgment Act

Respondent's final argument is that the Court's lack of subject matter jurisdiction cannot be saved by Petitioner filing the Petition under the Declaratory Judgment Act, 28

---

[6] The Court acknowledges that appraisals and arbitrations are different in several respects but finds the rationale in *Woodmen* instructive.  The Court also rejects, for reasons already explained, Respondent's argument that the object of this litigation is without any monetary value because "[u]nlike arbitration, an appraisal only binds the parties to the amount of loss, not the amount of payment." *Reply* [#14] at 8.

U.S.C. § 2201. *Motion* [#11] at 3-4. Although it is true that any action premised on the Declaratory Judgment Act must still meet the minimum jurisdictional requirements, *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006), the Court need not address Respondent's argument given the Court's conclusion above that those jurisdictional requirements have been satisfied.

## IV. Conclusion

Based on the foregoing, the Court concludes that Petitioner has sufficiently demonstrated that the Court has subject matter jurisdiction to adjudicate the Petition [#1] by appointing an umpire pursuant to the Policy's appraisal provision. Accordingly,

IT IS HEREBY **RECOMMENDED** that Respondent's Motion to Dismiss [#11] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the Parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-148 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-1413 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  November 30, 2018

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge